## Case No. 1,978.

### In re BROWN.

[5 Law Rep. 121.]

District Court, S. D. New York. May, 1842.

BANKRUPTCY—SCHEDULE—PROPERTY OF BANKRUPT —WHAT CONSTITUTES.

Where the petitioner for a decree of bankruptcy was the clerk or general agent of a solvent firm, under an arrangement to receive a fixed compensation as salary, and, in addition thereto, one-fourth part of the net profits of the business, as compensation for his services, it was *held*, that this privilege or emolument was not an interest or property which the petitioner was bound to specify in his schedule.

[In bankruptcy. In the matter of George Brown. Exceptions to schedule filed overruled.]

BETTS, District Judge. The points adjourned to the circuit court have been so decided,[1] as that the proceedings of the petitioner for a decree of bankruptcy are not barred; and on the remittitur of that decision to this court it becomes necessary to dispose of another objection originally raised and discussed in this court, but which is not embraced in the adjudication of the circuit court.

On the examination of the bankrupt before a commissioner, it appeared that he was now employed in the store of Muir & Co., in this city, as clerk and general agent, under an arrangement to receive $1,500 for annual salary, and also one-fourth part of the net profits of the business, if any, as a compensation for his services. This privilege or emolument, it is contended in behalf of the creditor, is an interest or property, which the bankrupt was bound to specify upon his schedule. Upon the proofs, it does not appear that any profits have been realized in the business of Muir & Co., which may be the subject of division under the agreement, nor that the bankrupt has any other title or claim to them than in payment of his personal services whilst he continues a clerk or agent in the business. In this view of the subject, no distinction exists between the interest of the bankrupt in the payment to be made out of profits and those to be made in money; a compensation out of profits so stipulated not creating a partnership relation between the parties, or in respect to the public. 4 East, 144; 10 Johns. 226; 15 Serg. & R. 137. Is, then, the salary of the bankrupt, stipulated in consideration of services to be rendered, and only payable when they have been rendered, an interest which passes to his assignee? Unless it be of that quality, he need not state it on his inventory.

He is to give an accurate inventory of his property of every name, kind and description, and whatever interpretation may be given the term "property," it must undoubtedly be limited to that which was a right

or equity in the bankrupt at the time; and however comprehensive such rights may be, they are all acquired by the assignees, by force of the third section of the act. The local law may not always supply a certain interpretation to this term; for a bankrupt resident in one state may have interests in another, which in the latter are property in its distinctive and unequivocal sense, whilst in that where he is declared bankrupt, it cannot be recognized as an interest of any quality or denomination. Such might be the case with an ownership of slaves. So also, creditors may have remedies given them by special legislation against their debtors, which go beyond covering his property as such, and may even subject his personal services or daily earnings to be appropriated by process of law to the satisfaction of debts; what is so appropriated would not be rendered property, by such declaration of law. If, then, it should appear, that wages, salaries, or the earnings of a debtor, stipulated to be paid him in any mode, may be sequestered in this state by process out of chancery in behalf of his creditors, such special procedure would not determine, that the salary or wages in the process of being earned, became property, which the assignee can make title to under the bankrupt act. Offices of inheritance, or for a term of years, not judicial in their character, annuities and income ejusdem generis, pass under the English bankrupt law to the assignee.

The English rule cannot be applied to offices under our laws, they being by their tenure and nature mere public trusts, and no more assignable at law than an executorship or guardianship. Lord Hardwicke seems to concede, that a portion of the living of a clergyman may be sequestered, and a proportionate part be distributed amongst his creditors, the residue being applied to the uses of the cure. Ex parte Meymot, 1 Atk. 196. But the doctrine rests upon a condition of things entirely diverse from that of the clergy in this country. Advowsons, presentations, and incumbrances in the English Church, are a species of property independent of the consideration of compensation for services statedly and continually performed in ministering to congregations, and the rules grown up in relation to them can have no bearing on the inquiry whether the pay or salary stipulated in contract with clergymen, would become liable for their debts before being paid over to them.

The views of Lord Hardwicke are given with more fullness in Re Richardson, Ambl. 73, where he comments upon the power under the bankrupt act of 13 Elizabeth, subjecting all offices to sale; and yet places the disposition of an office on so many limitations and conditions as to evince, in the clearest manner, that nothing short of the potency of an act of parliament would be regarded sufficient to make such interests and subject of transfer to assignees and of sale for creditors. In another case, nearly contemporaneous, he distinguishes between an "office" and a "place,"—that of a licensed broker,—and excludes the latter from the reach of the bankrupt acts. Ambl. 89. The king's bench repudiate in strong language the idea that officers receiving stipends are obliged to assign them on their insolvency; and Buller, J., puts it upon sound grounds, that future accruing payments cannot be transferred by the individual, nor be made subject to his debts. Flarty v. Odlum, 3 Durn. & E. [Term R.] 681; 4 Durn. & E. [Term R.] 248; 3 Brod. & B. 321. Judge Washington ruled that a possible interest of the bankrupt formed no part of his estate, which would pass under the former United States bankrupt law (2 Wash. C. C. 408 [Krumbaar v. Burt, Case No. 7,944]), and the reward a person may in future realize for his personal services, can be no more than possibilities of the lightest texture. It is not necessary to speculate upon the effects of a statute, which should explicitly dedicate part of the wages or salary to be earned by a bankrupt, to the payment of his debts,—the case before the court only demanding judgment whether such "expectancies" are "property" or "interests," within the general scope of those terms. I think not, and accordingly declare against the exception.